```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YELLOWBIRD BUS COMPANY, INC.,  :    CIVIL ACTION
                               :    NO. 09-5835
        Plaintiff,             :
                               :
        v.                     :
                               :
LEXINGTON INSURANCE COMPANY,   :
                               :
        Defendant.             :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              July 12, 2010

**I.   INTRODUCTION**

The instant dispute involves the interpretation of the terms of an excess automobile liability insurance policy issued for the period of October 7, 2005 through October 7, 2006 (the "Excess Policy"). The Excess Policy was issued to Plaintiff Yellowbird Bus Company, Inc. ("Yellowbird") by Defendant Lexington Insurance Company ("Lexington"). Lexington asserts that the coverage under the Excess Policy is, or will soon be, exhausted, whereas Yellowbird contends there is no aggregate limit under the Excess Policy, such that Lexington is obligated to defend and indemnify Yellowbird for all claims arising out of a July 5, 2006 motor vehicle accident.

**II.  BACKGROUND**

   A. <u>Facts</u>

The underlying incident that precipitated the instant dispute was an automobile accident which occurred on July 5, 2006

(the "Accident") between a Yellowbird school bus and truck owned by Cowan Systems, Inc. ("Cowan"). As a result of the Accident, over 65 claims were asserted in the Court of Common Pleas of Philadelphia County Pennsylvania, and were consolidated into a single action (the "Underlying Litigation"). A dispute exists between Yellowbird and Cowan as to responsibility for the Accident. All but five of the asserted claims against Yellowbird in the Underlying Litigation have been settled. These five remaining claims are pending in consolidated personal injury cases in the Court of Common Pleas.[1]

During the relevant time period, Yellowbird had a primary insurance policy (the "Primary Policy") issued by National Casualty Company, which has a combined single limit of $1 million per accident with no aggregate limit as to the number of covered accidents. The Primary Policy will be exhausted due to the settlements reached in the Underlying Litigation.

The Excess Policy was drafted by Lexington and is regulated and governed by Pennsylvania law. The relevant provisions of the Excess Policy are as follows:

I. <u>COVERAGE</u>

    A.  We will pay on behalf of the Insured that portion of the loss which the Insured will become legally obligated to pay as compensatory damages (excluding all

---

[1] The remaining plaintiffs in the Underlying Litigation, all of whom are citizens of Pennsylvania, are Carmen Batista, Jose Rosado, Brendi Lopez, Neena Meeker, and Fanny Cepeda.

fines, penalties, punitive or exemplary damages) by reason of exhaustion of all applicable underlying limits, whether collectible or not, as specified in Section II of the Declarations, subject to:

    1. The terms and conditions of the **underlying policy** listed in Section IIA of the Declarations, AND

    2. Our Limit of Liability as stated in Section IC of the Declarations.

II. <u>DEFENSE</u>

    A. This section shall apply to claims resulting from **occurrences** not covered by any **underlying insurance** due to exhaustion of any aggregate limits by reason of any losses paid thereunder.

    1. We will defend any suit against the **Insured** alleging liability insured under the provisions of this policy and seeking recovery for damages on account thereof, even if such suit is groundless, false or fraudulent, but we will have the right to make such investigation and negotiation and settlement of any **claims** or suits as may be deemed expedient by us.

    2. We will pay: (a) all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy; (b) all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds; (c) all costs taxed against the **Insured** for any such suits; (d) all expenses incurred by us; and (e) all interest accruing after entry of judgment until we have paid, tendered or deposited in court that part of any judgment as does not exceed the limit of our liability thereon.

    3. We will reimburse the **Insured** for all reasonable expenses incurred at our request, (including actual lost wages or salary, but not loss of other income, not to exceed one hundred (100) dollars per day) because of the **Insured's** attendance at hearings or trial at such request.

    4. We will pay all pre-judgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of

insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

  B. We will pay the amounts incurred under IIA above, but any such payments shall serve to reduce the Limits of Liability of this policy as stated in the Declarations.

. . . .

III. <u>LIMITS OF LIABILITY</u>

  A. <u>Aggregate</u>

This policy is subject to an aggregate limit of liability as stated in the Declarations. This aggregate of liability is the maximum amount which will be paid under this policy for all losses in excess of the **underlying policy** limits occurring during the policy period applying separately to:

  1. **the products hazard and completed operations hazard** combined;

  2. All other coverages combined, except automobile liability, which is not subject to any aggregate limits.

  B. <u>Occurrence Limit</u>

Subject to the above provision respecting aggregate, the Limit of Liability stated in the Declarations as per occurrence is the total limit of our liability for ultimate net loss including damages for care, loss of services or loss of consortium because of personal injury and property damage combined, sustained by one or more persons or organizations as a result of any one (1) **occurrence**.

  C. <u>Limit Exhaustion</u>

This policy shall cease to apply after the applicable limits of liability have been exhausted by payments of defense costs and/or judgments and/or settlements.

(Def.'s Mot. Dismiss Ex. A 4-5) (emphasis in original).

  The Excess Policy defines the term "occurrence" as

follows:

> Occurrence - The word **occurrence** means an event, including continuous or repeated exposures to conditions, neither expected nor intended from the standpoint of the **Insured**. All such exposure to substantially the same general condition shall be one **occurrence**.

(Id. 8.) (emphasis in original).

The Declarations page to the Excess Policy provides in relevant part:

> C) Limits of Liability: $4,000,000
>    Aggregate Limits - separately as respects:
>    1. Products Hazard and
>       Completed Operations         $4,000,000
>       Hazards combined.
>    2. All Other Coverage Combined  $4,000,000
>       (Except Automobile Liability, which is
>       not subject to any aggregate limit.)

(Id. 2.)

### B. Procedural History

This action was commenced by way of a complaint filed in the Court of Common Pleas of Philadelphia County on November 17, 2009. In the complaint, Yellowbird asserted three separate claims against Lexington: (1) Count I - seeking declaratory judgment that the Excess Policy has no aggregate or occurrence limit with respect to Yellowbird's liability and defense costs resulting from the Accident and Underlying Litigation; (2) Count II - alleging that Lexington breached the terms of the Excess Policy; and (3) Count III - alleging that Lexington acted in bad faith with respect to Yellowbird's insurance claim. On December 8, 2009, Lexington removed this action on the basis of diversity

jurisdiction under 28 U.S.C. § 1332.  On May 11, 2010, the Court denied Yellowbird's motion to remand.  The motion to dismiss filed by Lexington is now ripe for adjudication.

**II. DEFENDANT'S MOTION TO DISMISS**

    A.    <u>Standard of Review</u>

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." <u>DeBenedictis v. Merrill Lynch & Co., Inc.</u>, 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks and citation omitted).  In order to withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 & n.3 (2007).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555 (citation omitted).  Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986) (cited with approval in <u>Twombly</u>, 550 U.S. at 555).

The pleading must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). A claim possesses such plausibility "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, -- U.S. --- , 129 S. Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the Court is to limit its inquiry to the facts alleged in the complaint and its attachments, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

B. Discussion

1. Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)

As an initial matter, Lexington moves under Fed. R. Civ. P. 12(b)(1) on the grounds that the issues presented in Yellowbird's complaint are not ripe for review. Lexington argues that the claims alleged in Yellowbird's complaint are contingent upon future circumstances concerning whether the Excess Policy requires coverage beyond the $4 million threshold that has not yet been reached.

In determining whether a case is ripe, the Court is instructed generally to examine: "(1) 'the fitness of the issues for judicial decision,' and (2) 'the hardship to the parties of withholding court consideration.'" Peachlum v. City of York, 333 F.3d 429, 434 (3d Cir. 2003) (citing Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 105 (1977)).[2] Here, the parties have presented the question of whether Lexington is required to provide funds to assist Yellowbird in its defense in the Underlying Litigation. Both parties concede that the disposition of this case centers around the Court's interpretation of the Excess Policy. As this issue is a question of law, it is fit for adjudication at this time. Furthermore, Yellowbird has represented to the Court that the five unsettled cases pending in the Underlying Litigation are scheduled to commence trial in state court in August 2010. The scope of coverage of the Excess Policy will determine which party must bear the expense of hiring trial experts, defense counsel trial preparations and the costs associated with the actual trial of these cases. Yellowbird has represented to the Court that it does not have the financial

---

[2] Pennsylvania law employs an identical two-part test for determining ripeness. See Treski v. Kemper Nat. Ins. Companies, 674 A.2d 1106, 1113 (Pa. Super. Ct. 1996) (explaining that in determining ripeness "[t]he court must consider whether the issues are adequately developed for judicial review and what hardship the parties will suffer if review is delayed") (citation omitted).

resources to absorb these defense costs absent contribution from the Excess Policy. Thus, Yellowbird stands to endure a considerable hardship if delay of these issues is postponed. Under the circumstances, the instant controversy is ripe for review.

Furthermore, in the context of a declaratory judgment action, courts generally find that the issue of whether an insurer has a duty to defend an insured in an underlying action is sufficiently ripe. See Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d Cir. 1990) (explaining that the issue of "the insurers duty to defend was ripe even though liability had not been definitely established in the underlying suits"); Evanston Ins. Co. v. Layne Thomas Builders, Inc., 635 F. Supp. 2d 348, 353 (D. Del. 2009) (citations omitted); The Home Ins. Co. v. Powell, No. 95-6305, 1996 WL 269496, at *5 (E.D. Pa. May 20, 1996)(recognizing that the Third Circuit holds that "a controversy regarding the duty of an insurer to defend is ripe for declaratory judgment purposes even if liability has not been established in the underlying suit").

Therefore, Lexington's argument concerning the ripeness of the instant case is rejected.

### 2. Count I - Declaratory Judgment

Lexington contends that Count I should be dismissed because the language of the Excess Policy forecloses Yellowbird's

proposed interpretation that the Excess Policy contains no limit with respect to Yellowbird's potential liability and defense costs for the Underlying Litigation.

The interpretation of an insurance policy, as all other contracts, is a question of law to be determined by the Court. See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006) (citing 401 Fourth Street v. Investors Insurance Co., 879 A.2d 166, 170 (Pa. 2005)); Minnesota Fire and Cas. Co. v. Greenfield, 855 A.2d 854, 861 (Pa. 2004) ("The interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.") (internal quotation marks and citation omitted). When the terms of the policy are unambiguous, they control, but when the terms are ambiguous they are to be interpreted in favor of the insured. Donegal Mutual Ins. Co. v. Baumhammers, 938 A.2d 286, 291 (Pa. 2007) (citations omitted).

The parties concur that the costs concerning the Underlying Litigation qualify as "automobile liability" under the Excess Policy. Furthermore, Lexington concedes that the Excess Policy contains no "aggregate limit." The critical question to be resolved is whether the "per occurrence" limitation contained in the Excess Policy caps Lexington's liability at $4 million with respect to the Underlying Litigation.

The "Occurrence Limit" provision of the Excess Policy provides:

> Subject to the above provision respecting aggregate, the Limit of Liability stated in the Declarations as per occurrence is the total limit of our liability for ultimate net loss including damages for are, loss of services or loss of consortium because of personal injury and property damage combined, sustained by one or more persons or organizations as a result of any one (1) **occurrence**.

(Def.'s Mot. Dismiss Ex. A 5.) (emphasis in original).

Yellowbird contends that the phrase "subject to" in the Occurrence Limit provision dictates that the specified occurrence limit is subordinate to the provision of the Excess Policy that disclaims an aggregate limit. Therefore, Yellowbird argues that because the occurrence limit is controlled by the disclaimer as to aggregate liability, there is no cap on Lexington's liability under the Excess Policy with respect to the Underlying Litigation.

Lexington responds that the Occurrence Limit provision is clear and limits Lexington's liability to a $4 million cap for each occurrence, i.e., an event. Lexington distinguishes between the per occurrence limit (which caps its liability to $4 million for Yellowbird's claims concerning a single event) with the aggregate limit disclaimer (which does not limit Lexington's liability with respect to the <u>number</u> of occurrences that can occur during the relevant policy period).

According to the plain meaning of the language of the Excess Policy, Lexington's view should control. The construction

offered by Yellowbird is untenable when the Occurrence Limit provision and Aggregate Limit provision are read together. If the Court were to adopt Yellowbird's interpretation, the express language limiting Lexington's liability to $4 million would be superfluous. See Gaffer Ins. Co. v. Discover Reinsurance Co., 936 A.2d 1109, 1115 (Pa. Super. Ct. 2007) (considering the contract as a whole and giving effect to every provision if possible is a basic principle of contract interpretation). Simply put, Yellowbird's construction completely disregards the $4 million limitation, thereby rendering it a nullity. Importantly, Yellowbird fails to explain what effect the $4 million occurrence limit would have under its interpretation of the Excess Policy.[3]

In contrast, Lexington's interpretation comports with the plain meaning of the relevant provisions of the Excess Policy, in that the Occurrence Limit provision clearly states that Lexington has only $4 million of liability with respect to each qualifying event under the Excess Policy, whereas the Aggregate Limit provision disclaims any cap for liability on the

---

[3] A plausible reading of the $4 million occurrence limit would be that it refers to a cap on Lexington's liability with respect to each person injured as a result of a single occurrence. The terms of the Excess Policy, however, do not support such a construction. The provision of the Excess Policy concerning the occurrence limit clearly and expressly states that Lexington's liability for each occurrence is "the ultimate net loss including damages for care, loss or services or loss of consortium because of personal injury and property damage combined, sustained by one or more persons or organizations as a result of any one (1) occurrence." (Def.'s Mot. Dismiss Ex. A 5.) (emphasis added).

total amount owed for the combined qualifying events that occur during the entire policy year. In short, a plain reading of the Excess Policy dictates that the aggregate limit disclaimer means that Yellowbird can assert claims for a limitless number of events in one policy year, but that claims relating to each event that occur within that year are subject to the $4 million cap.

Therefore, Yellowbird's request for declaratory judgment that the Excess Policy has no limit with respect to the Underlying Litigation is denied.

### 3. Count II - Breach of Contract

Yellowbird asserts that Lexington's position with respect to the $4 million limit concerning the Underlying Litigation constitutes a breach of contract. Furthermore, Yellowbird asserts that Lexington "has also breached its contractual obligations by attempting to erode the policy limits with defense costs and mediation expenses." (Compl. ¶ 52.) Lexington counters that any erosion of the coverage on account of defense and mediation costs is consistent with the provisions of the Excess Policy. Section III.C of the Excess Policy is entitled "Limit Exhaustion" and provides "[t]his policy shall cease to apply after the applicable limits of liability have been exhausted by payments of defense costs and/or judgments and/or settlements." (Def.'s Mot. Dismiss Ex. A 5.) It appears from the plain language of this provision that any erosion that is occurring with respect to defense costs and mediation expenses is consistent with the express language of the Excess Policy.

Yellowbird may be asserting that Lexington is incurring such expenses in bad faith, however, this is not evident on the face of the complaint.

To the extent that Yellowbird asserts that failing to provide coverage beyond the $4 million threshold is a breach of contract, this claim will necessarily fail based on the interpretation of the Excess Policy set forth above. As it appears that Yellowbird's breach of contract claim is based solely on Lexington's refusal to pay funds exceeding $4 million, it will be denied with leave to amend. This allows Yellowbird an opportunity to articulate more clearly its theory of liability with respect to the breach of contract claim, and in particular the erosion argument addressed above.

    4.   <u>Count III - Bad Faith Insurance Claim</u>

To establish a claim for bad faith denial of insurance coverage under Pennsylvania law, a plaintiff must show "with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." <u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 115 F.3d 230, 233 (3d Cir. 1997) (citing <u>Terletsky v. Prudential Prop. & Cas. Ins. Co.</u>, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)); <u>see</u> 42 Pa. C.S. § 8371.

In general, where an insurer has no duty to indemnify under the insurance policy, a claim for bad faith must be dismissed. <u>See</u> <u>USX Corp. v. Liberty Mut. Ins. Co.</u>, 444 F.3d 192, 202 (3d Cir. 2006) (affirming summary judgment on insured's bad

faith claim in favor of insurer because the bad faith claim "necessarily fails" since there was no coverage under the policy); The Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 751 n. 9 (3d Cir. 1999) (affirming district court which held that, under Pennsylvania law, "bad faith claims cannot survive a determination that there was no duty to defend, because the court's determination that there was no potential coverage means that the insurer had good cause to refuse to defend"); Kiewit Eastern Co., Inc. v. L & R Constr. Co., Inc., 44 F.3d 1194, 1206 & n. 39 (3d Cir. 1995) (insured has no bad faith claim where insurer had no duty to defend or indemnify insured); Younis Bros. & Co. v. CIGNA Worldwide Ins. Co., 899 F. Supp. 1385, 1397 (E.D. Pa. 1995) ("an insurer's investigation and adjustment of a claim does not support an action under § 8371 where an insured's claim for coverage fails upon its merits and the insurer's actions in handling the claim would not have been actionable under Pennsylvania common law prior to the enactment of § 8371"); Lucker Mfg. v. Home Ins. Co., 818 F.Supp. 821, 830 (E.D. Pa. 1993) (same), aff'd, 23 F.3d 808 (3d Cir. 1994); Messina v. Liberty Mut. Ins. Co., No. 95-7093, 1996 WL 368991, at *3 (E.D. Pa. July 1, 1996) (insurance bad faith claim cannot continue where arbitrator finds that resolution of coverage is in favor of insurer).

In certain limited circumstances, the Third Circuit has recognized the concept of "bad faith" can extend beyond an insured's denial of a claim to several other areas of misconduct.

See Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (citations omitted) (affirming summary judgment for insurer on insured's bad faith claim after holding that insured's omissions on her insurance application constituted bad faith as a matter of law); W.V. Realty, Inc. v. Northern Ins. Co., 334 F.3d 306, 317-18 (3d Cir. 2003); Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 244 F. App'x 424, 434-35 (3d Cir. 2007) (non-precedential) (insurer's failure to follow internal guidelines evidence of bad faith); ("[A] finding that the [insurer] did not ultimately have a duty to cover the plaintiff's claim does not per se make the [insurer's] actions reasonable.").

Yellowbird's complaint provides that the bad faith claim arises from Lexington "refusing to honor the terms of its excess liability insurance policy with Yellowbird, (2) refusing to provide a defense for the Underlying Litigation, (3) refusing to indemnify the Interested Parties with respect to the Underlying Litigations without a policy limit as provided in the clear terms of the Excess Policy, and (4) advising Yellowbird improperly that it will deduct costs and mediation expenses in order to erode the policy limits." (Compl. ¶ 58.) The current complaint does not sufficiently allege a bad faith insurance claim based on the interpretation of the Excess Policy set forth above. Although Yellowbird's bad faith claim is almost certainly barred if based purely on breach of the Excess Policy, it may be plausible for Yellowbird to assert that Lexington engaged in the type of conduct which rises to the level of bad faith in denying

the insurance claim if it is allowed leave to amend.  Therefore, this claim will also be denied with leave to amend.

### 5. Bifurcation of the Bad Faith Insurance Claim

Lexington requests that Yellowbird's bad faith insurance claim be stayed pending resolution of the breach of contract claim.  Under Federal Rule of Civil Procedure 42(b), the Court has discretion to bifurcate separate claims and issues "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b).  The decision to bifurcate a trial "is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance."  Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978) (citing Idzojtic v. Penn. R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1971)).  The moving party bears the burden of showing that bifurcation would "serve judicial economy, avoid inconvenience, and not prejudice any of the parties."  AstenJohnson v. Columbia Cas. Co., No. 03-1552, 2006 WL 1791260, at *2 (E.D. Pa. June 22, 2006).

It appears that the discovery pertaining to Yellowbird's breach of contract claim substantially overlaps with the bad faith insurance claim.  Both of the claims are grounded in Lexington's refusal to provide funds in excess of the $4 million occurrence limit.  Therefore, it does not appear that bifurcating these claims would serve any purpose of judicial efficiency.  As such, Lexington's request to bifurcate will be denied.

### 6. Yellowbird's Request for Leave to Amend

In response to Lexington's motion to dismiss, Yellowbird requests permission for leave to amend under Federal Rule Civil Procedure 15(a). In general, leave to amend is freely granted. Winer Family Trust v. Queen, 503 F.3d 319, 330-31 (3d Cir. 2007) (citing Fed. R. Civ. P. 15(a)). The Third Circuit has instructed that leave to amend may be denied where the amendment would cause undue delay or prejudice, or the proposed amendment would be futile. Id. (citing In re Alpharma, Inc. Sec. Litig., 372 F.3d 137, 153 (3d Cir. 2004)). The decision to grant a motion for leave to amend is within the sound discretion of the Court. Cureton v. Nat'l Collegiate Athletic Ass'n., 252 F.3d 267, 272 (3d Cir. 2001).

Leave to amend with respect to Count I for declaratory judgment will be denied as the claim is rendered futile based on the interpretation of the Excess Policy set forth above. However, the Court will allow Yellowbird an opportunity to amend with respect to the breach of contract and bad faith claims, as it cannot be determined on the present facts whether such an amendment definitely would be futile.

## III. DEFENDANT'S MOTION FOR LEAVE TO FILE A REPLY BRIEF

On June 17, 2010, Lexington filed a motion for leave to file a reply brief. Yellowbird filed a response in opposition to the motion to file a reply brief. Yellowbird correctly points out that the reply brief does not contain any material not

covered in Lexington's initial brief that is necessary to resolve the pending motion to dismiss.  Therefore, as it is unnecessary to consider Lexington's reply brief to adjudicate the pending motion to dismiss, the motion to file a reply brief will be denied.

**IV.  CONCLUSION**

Based on the express language contained within the Excess Policy with respect to the occurrence limit, Yellowbird's claim for declaratory judgment will be denied, and Yellowbird's claims breach of contract, and bad faith insurance will be dismissed as the Excess Policy does contain a $4 million per occurrence limit as to the Underlying Litigation.  Leave to amend will be denied with respect to the declaratory judgment claim, however, leave will be granted to allow Yellowbird an opportunity to articulate its breach of contract and bad faith insurance claims consistent with the interpretation of the Excess Policy set forth above.  Lexington's motion for leave to file a reply brief will be denied.

An appropriate Order will issue.